### UNITED STATES DISTRICT COURT
#### MIDDLE DISTRICT OF FLORIDA
##### ORLANDO DIVISION

**CHRISTOPHER D. BROUILLETTE,**

**Plaintiff,**

**-vs-**                                          **Case No.  6:14-cv-259-Orl-DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

**Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

## I.      BACKGROUND

### A.      Procedural History

Plaintiff filed for a period of disability, and Disability Insurance Benefits on December 30, 2010, alleging an onset of disability on March 26, 2008, due to depression, diabetes (type I), back injury, foot and eye problems, and arthritis, bursitis, and tendinitis in both hips. R. 144. R. 128-29, 173.  His application was denied initially and upon reconsideration.  R. 70-71.  Plaintiff requested a

hearing, which was held on August 23, 2012 (in Jackson, Mississippi), before Administrative Law Judge W. Stephen Hubbard (hereinafter referred to as "ALJ"). R. 32-51. In a decision dated August 28, 2012, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 21-27. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 15-16. The Appeals Council denied Plaintiff's request on December 19, 2013. R. 1-4. Plaintiff filed this action for judicial review on February 14, 2014. Doc. 1.

### B.      Medical History and Findings Summary

Plaintiff was 42-43 years old during the relevant period. R. 39. Plaintiff has a high school education, and his past relevant work was as a construction laborer. R. 36-38, 48, 145-46, 155-57.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of proliferative diabetic retinopathy ("PDR") and blurry vision in both eyes, and chronic pain in the lower back, both knees, and hips. R. 173, 188. Plaintiff's insured status for DIB expired on September 30, 2009, and thus, the relevant period in this case is from March 26, 2008, to September 30, 2009. R. 133, 151.   See 20 C.F.R. §§ 404.101, 404.131 (2014).

After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff's impairments were non-severe because they did not significantly limit Plaintiff's ability to perform basic work activities for 12 consecutive months *prior* to expiration of his DIB insured status on September 30, 2009. R. 23-26. The ALJ determined, in the alternative, even if Plaintiff's diabetes mellitus, proliferative diabetic retinopathy of the right eye, non-proliferative diabetic retinopathy of the left eye, degenerative disc disease of the lumbar spine, hip bursitis, right shoulder, neck, and thoracic pain, hypertension, and hyperlipidemia were found to be severe, and if it was determined that he had the residual functional capacity to perform light work as defined in 20 CFR 404.l 567(b), (except that he could not perform work requiring climbing of ladders or in environments resulting in

exposure to vibration, such as driving or heavy equipment), he would nonetheless not be disabled through the date last insured.  R. 26.

During the hearing, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity. The vocational expert opined that, through the dated last insured, there were jobs that existed in significant numbers in the national economy that such an individual could have performed as a ticket taker, counter attendant, and parking lot cashier.  R. 26. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, from March 26, 2008 to September 30, 2009.  R. 26-27.

Plaintiff now asserts two points of error. First, he argues that the Appeals Council erred in not remanding the case to the ALJ to consider "new and material" evidence from Plaintiff's physician, Dr. Weiss.  Second, he claims the ALJ erred by not ordering a consultative examination of Plaintiff. The Court considers both arguments, but in reverse order.  For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II.      STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th

Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

### A.   The ALJ's decision

Plaintiff argues that the ALJ should have ordered a consultative examination after reviewing his limited number of medical records and once Plaintiff explained that he was not able to afford treatment. R. 38, 40. The ALJ is to determine the claimant's residual functional capacity based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of the RFC assessment is typically based on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of treating physicians unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; 20 C.F.R. §§ 404.1527(d), 416.927(d). However, in this case, Plaintiff readily admitted that he had a gap in treatment (R. 38-40), thus, there were few medical records from the relevant period for the ALJ to review.

The ALJ has a duty to fully and fairly develop the record. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. *See Graham v. Apfel*, 129 F.3d 1420 (11th Cir. 1997). The Commissioner argues that the ALJ developed a full and fair record, thus, the ALJ's decision was based on substantial evidence.

Plaintiff's date last insured was September 30, 2009, and to qualify for disability insurance benefits, Plaintiff must establish disability on or before that date. Plaintiff had been an insulin-dependent diabetic since age 11 when he developed juvenile diabetes. R. 259. Plaintiff had not seen an endocrinologist for his diabetes in 20 years until he finally saw one in early 2008. R. 219. He saw the doctors at the Eye Institute in Melbourne in February 2008, who noted a hemorrhage in the retina of his right eye, diagnosed on March 6, 2008 as Proliferative Diabetic Retinopathy; abnormal blood vessels had grown in his right eye and there had been some leakage from them into the eye. R. 211-14. The doctor prescribed a laser treatment procedure, which he warned Plaintiff could be quite

painful.  R. 212.  On March 27, 2008, Plaintiff saw an endocrinologist, Dr. Gonzales, who noted that Plaintiff had had no medical care for 20 years and had recently been diagnosed with right eye retinopathy and had laser surgery.  R. 219-20.

Plaintiff first saw the neurologist, Dr. Weiss on April 6, 2010, for complaints of chronic pain in his lower back and hips.  R. 237.  Plaintiff reported having experience pain for years as well as an episode of pain from bending over which dropped him to the floor.  R. 237.  Plaintiff testified at the hearing that he went to Dr. Weiss in April of 2010 because, even though the pain was constant, he could not afford to do anything about it until his dad said he would pay for it, so that is when he finally went to the doctor.  R. 45.

Dr. Weiss noted Plaintiff's reports that the pain was constant, dull, and aching with occasional sharp pain radiating to bilateral hips and lower extremities; he rated his low back pain at 7/10 at rest and 9/10 with symptoms and occasional weakness in both legs. R. 237.  Dr. Weiss diagnosed Plaintiff with low back pain with bilateral hip pain, suspect herniated nucleus pulposus, and hip disease. R. 237.  On April 15, 2010, Dr. Weiss noted that a lumbar MRI revealed a large herniated nucleus pulposus ("HNP") at L5-S1, Degenerative Disc Disease, and a small HNP at L1-2; the MRI of the hips revealed mild insertional tendinopathy of the gluteus minimus bilaterally with small overlying bursal, collections, which were likely reactive.  R.  234.

Plaintiff apparently did not begin receiving more regular treatment for his diabetic condition until August 2010, when he saw Dr. Reddy, but even when receiving medical treatment for his diabetes, the notes reflect that he only "checked his blood sugar once in awhile" and he was non-compliant.  R. 285-86.  Dr. Reddy noted Plaintiff's glucose level was 477 at the August 2010 appointment, and that Plaintiff had diabetes and hyperlipidemia.  R. 242, 295.  His musculoskeletal and neurologic exams were normal at the October 2010 and April 2011 appointment.  R. 286, 289.

On December 20, 2010, Plaintiff returned to Dr. Weiss' office complaining of increased low back pain that felt throbbing and aching. R. 231. Plaintiff reported that some days he could not get out of bed due to the pain; the pain radiated to the front of the hips; and he had more hip pain and more pain with standing and sitting for long periods of time. R. 231. On exam, the clinician observed lumbar spine tenderness to posterior back, increased pain with range of motion and with lateral motions and forward flexion. R. 232. The Nurse Practitioner Ms. Martin, assessed low back pain with HNP at L5-S1 and prescribed pain medication. R. 233.

Plaintiff returned to Dr. Weiss' office in early 2011, where he continued to see the Nurse Practitioner stating that overall his condition was the same; he still did not have insurance and could not afford treatment. R. 223, 309. He complained of lumbar pain with radiation to bilateral hips and anterior upper thighs; leg weakness and subsequent numbness in the legs and second digit of the left foot. R. 226, 311. On exam, his motor strength, sensation, and reflexes were normal in all four extremities, however, he had lumbar spine tenderness with increased pain with range of motion and with lateral motions and forward flexion. R. 311. At the April appointment, Plaintiff had a stiff antalgic gait, unable to toe walk, mild ataxia with tandem walking, and reported a occasional muscle spasms. R. 226. He was assessed with low back pain with HNP at L5-S1 and prescribed pain medication. R. 311.

Plaintiff cancelled all of his appointments on October 4, 2011 because he stated "he had a job in North Carolina for about 1 month" and he would call when he "gets back in town" to reschedule. R. 302. Plaintiff was prescribed Avastin in both eyes for his PDR and blurriness in his right eye. R. 303-04. There are no additional treatment records for 2011 from his eye doctor, Dr. Katz. R. 300-08. He was not seen again by Dr. Katz until May 2012, when the doctor noted Plaintiff's eye remained unchanged from March 2011. R. 301.

Plaintiff was examined by Dr. Weiss on June 5, 2012 for complaints of constant neck pain radiating to both shoulders and upper extremities, mid back pain, worse with activity, and pain that increased with sit, stand, or walk for prolonged periods of time, and radiated to both hips and legs. R. 327.  Dr. Weiss noted normal gait and station including toe and heel walking, tenderness in the lumbar spine to the posterior back with increased pain with range of motion and with lateral motions and with forward flexion. R. 329.  In addition to previous assessments, he added right shoulder pain with decreased range of motion; neck pain; and thoracic pain.  R. 329.  He added a second pain medication to Plaintiff's prescription.  R. 330.

About three weeks later, Dr. Weiss' office[1] first completed a Physical Restrictions Evaluation ("PRE") on June 25, 2012, and opined that Plaintiff should sit for less than a hour in an 8 hour workday and sit for 15-30 minutes without interruption.  R. 297-99.  Where the PRE asked for medical findings that supported the assessment, the response was "constant low back pain that increases with activity.  MRI of LS-spine [lumbar spine of 4/14/10] reveals HNP at L5-S1. Neurological exam revealed LS-spine tenderness, increased pain with motion and with forward flexion." R. 297.

The PRE also stated that Plaintiff could stand/walk for less than a hour in a 8 hour work day and should stand/walk 15-30 minutes uninterrupted because "the patent has constant low back pain with herniated disc at L5-S1 as well as lower extremity weakness; he did not need an assistive device for walking. R. 297. The PRE stated that Plaintiff had "no significant improvement. His symptoms vary in severity depending on activity levels, weather, etc."  R. 297.

Where the PRE form asked whether providing an option to change positions from sitting to standing enable the patient to work 8 hours a day on a sustained basis, the response was "no" because

---

[1]It appears that a staff member of Dr. Weiss completed the report.  R. 297-99.

the patient was "permanently totally disabled." R. 297.  The PRE also said Plaintiff should lie down or recline every 1-2 hours for 15-30 minutes due to his low back pain with herniated disc, diabetes, retinopathy, hyperlipidemia, hypertension, right shoulders decreased range and thoracic pain. R. 298. He should lift less that 5 pounds due to right should pain and limited range of motion; and he should never climb, balance, stoop, crouch. kneel or crawl. R. 298.  Plaintiff would miss more than 3 work days a month due to his impairments because, the PRE said, "The patient is P.T.D. (Permanently Totally Disabled)."  R. 299. He was prescribed medications – muscle relaxers and narcotic pain medications – to help with his symptoms.  R. 299.  The PRE also stated that the patient's objective medical condition would be reasonably expected to produce subjective symptoms of the  nature and severity alleged by him, and he could not tolerate even low levels of stress.  R. 299.

The ALJ acknowledged the June 2012 PRE for Dr. Weiss, but discounted Plaintiff's testimony concerning his limitations from back problems during the relevant period:

> At the hearing, the claimant testified that he stopped working in 2008, after being laid off. He said that he did not seek additional construction work, as he was "having so much pain." At that time, he reported, he was experiencing fatigue and cloudy vision, his diabetes was not controlled, and he had a retinal hemorrhage. The claimant further testified that he had pain in his back and hips at that time.

> As of 2009, the claimant's daily activities allegedly included getting up, making breakfast, checking his blood sugar, and taking his insulin before sitting or lying down until lunchtime, when he repeated the routine. After lunch, he sat or laid down again and "read a little bit." The claimant's girlfriend, with whom he lived, did a lot of the cooking.

> The claimant estimated that he could stand for one hour to one hour and 15 minutes and sit for one hour in 2009. On bad days, he stayed in bed all day and did not do anything.  After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with finding that the claimant had no severe impairment or combination of impairments for the reasons explained herein.

> In terms of the claimant's alleged visual impairment, the severity of symptoms and degree of limitation reported are not supported by the objective evidence of record. . . .

There is no evidence of any follow-up after March 6, 2008. Presumably, were the claimant's impairments as limiting as alleged, he would have sought and received further care.

The undersigned notes that no surgical intervention or laser treatment was recommended or performed for the claimant's left eye.

With regard to the claimant's alleged diabetes, it is noted that he only sought treatment for such one time between the alleged onset date, March 26, 2008, and the date last insured, September 30, 2009.
* * *
During the hearing, the claimant acknowledged no treatment between March 27, 2008, when he was treated by Guillermo Gonzales, M.D. (Exhibit 3F), and April 6, 2010, when he saw Gary Weiss, M.D., for back pain (Exhibit 4F).

As for the opinion evidence, little weight is given to the physical residual functional capacity assessment completed by Disability Determination Services medical consultant Louise Wunsch, M.D., on May 5, 2011 (Exhibit 7F). Dr. Wunsch's opinion was rendered nearly two years after the date last insured. Furthermore, it appears that her opinion is based on medical evidence that is subsequent to the date last insured. Likewise, little weight is given to the physical restrictions evaluation completed by Dr. Weiss on June 25, 2012 (Exhibit l0F). Dr. Weiss initially treated the claimant on April 6, 2010, some seven months after the date last insured.

In sum, prior to September 30, 2009, the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited his ability to perform basic work activities.

R. 25-26. The ALJ determined that, prior to September 30, 2009, the date last insured, Plaintiff did not have an impairment or combination of impairments that significantly limited his ability to perform basic work activities, thus, he was not disabled during the relevant period. R. 26.

Plaintiff argues that the ALJ erred in by not ordering a consultative examination once Plaintiff explained that he could not afford treatment during the relevant time period. and Plaintiff argues that the Commissioner's duty to develop the record includes ordering a consultative examination if one is needed to make an informed decision. Doc. 19 at 12 (citing *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984); *Nunez v. Commissioner*, Case No. 6:06-cv-1628-Orl-UAM, 2007 WL 4365657 (M.D. Fla. Dec. 13, 2007) (holding that once the ALJ decided to reject the opinion of the claimant's treating physician regarding the extent of the claimant's limitations, "it was necessary to further

develop the record to ascertain the extent of her limitations" by potentially ordering a consultative examination)).

The Commissioner argues that the ALJ was responsible for developing Plaintiff's complete medical history for at least the 12-month period before *December 2010*, the month in which he filed his application for DIB, and because Plaintiff was represented by counsel throughout the administrative proceedings[2], the ALJ had a basic duty to develop the record, not a special or enhanced duty, and Plaintiff retained the burden to produce evidence showing how his impairments affected his functioning during the relevant period.

The Commissioner also contends that the decision of whether to obtain a consultative exam is within an ALJ's discretion. Doc. 20 at 8 (citing 20 C.F.R. § 404.1517 (if an ALJ determines there is insufficient evidence from a claimant's medical sources to make a disability determination, the ALJ may order a consultative exam); 20 C.F.R. § 404.1519 (the decision to obtain a consultative exam "will be made on an individual case basis")). Given that Plaintiff did not file an application for DIB until more than a year after his DIB insured status had already expired (R. 128-29), the Commissioner contends, Plaintiff's argument that a consultative exam was necessary for the ALJ to "make an informed decision" is without merit. The Commissioner also argues that Plaintiff merely speculates that a consultative exam would have supported, not undermined, his disability claim and substantial evidence supports the ALJ's finding that Plaintiff was not disabled during the relevant period from March 26, 2008, to September 30, 2009.

In this case, despite having diabetes since age 11, Plaintiff readily acknowledges that he did not seek out medical care for 20 years, until his untreated diabetes began affected his vision. Only after his father agreed to pay for the doctor visit in 2010 did he seek treatment. Other records note

---

[2]The Commissioner cites to a plethora of pages demonstrating Plaintiff was represented by counsel. *See, e.g.,* 4-11, 15-17, 20, 32-34, 53, 55, 57, 61, 77, 79, 86, 88, 90-91, 95-96, 102, 109, 121, 123, 130, 194-95, 197-204.

that Plaintiff cancelled his healthcare appointments in October 2011 because he had a job in North Carolina.  The ALJ's decision not to order a consultative examination in mid-2012 to determine Plaintiff's condition from three to four years before – between March 2008 and September 2009– was appropriate, and his determination that Plaintiff was not disabled during that time period was based on substantial evidence.

### B.  Appeals Council

Plaintiff contends that the Appeals Council erred in not reversing the ALJ's decision based on the new and material evidence he submitted – Dr. Weiss' September 2012 letter opining that Plaintiff's impairments as stated on the June 2012 PRE retroactively dated back to the period prior to Plaintiff's date last insured three years before. R. 297-99, 335.  The Commissioner argues that the Appeals Council properly denied Plaintiff's request for review.

The ALJ noted in his decision that Plaintiff had acknowledged receiving no treatment between March 27, 2008, and April 6, 2010, the first time he ever saw Dr. Weiss for back pain, and the ALJ gave "little weight" to the physical restrictions evaluation completed by Dr. Weiss on June 25, 2012 because Dr. Weiss did not treat Plaintiff until April 6, 2010, some seven months after the date last insured. R. 26.

When Plaintiff's counsel submitted the September 20, 2012  of Dr. Weiss to the AC on February 12, 2013 (R. 202-04), the AC refused to grant review of the ALJ's decision:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.  We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of evidence of record.
>
> We found that *this information does not provide a basis for changing the Administrative Law Judge's decision.*
>
> In reaching this conclusion, the Appeals Council considered the Medical Opinion of treating source Dr. Gary Weiss dated September 20, 2012 (Exhibit 14E). A treating source opinion may be given controlling weight if the opinion is well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record (20 CFR 404.1527(b)(2)). Dr. Weiss indicated that his opinion from Exhibit 10F pertains to the period of June 5, 2012 through September 13, 2012. While Dr. Weiss also indicates that these restrictions opined existed seven months prior to his first examination of the claimant on April 6, 2010, *Dr. Weiss does not provide any narrative or objective evidence to support the opinion that the restrictions were present seven months prior to the first examination in April 2010* (Exhibit 14F). *In addition, Dr. Weiss's objective findings noted in the April 6, 2010 report do not support such restriction* (4F). Furthermore, *the evidence pertaining to the period prior to April 6, 2010, does not support the limitations opined by Dr. Weiss* (Exhibits 2F and 3F).

R. 1-2 (emphasis added).

When a plaintiff submits additional evidence to the Appeals Council and the Appeals Council denies review, the court must determine whether the Commissioner's decision is supported by substantial evidence on the record as whole. *See Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1262, 1266 (11th Cir. 2007); *Hummel v. Astrue*, No. 8:06-CV-725-T-EAJ, 2007 WL 2492460, *7 (M.D. Fla. Aug. 30, 2007) (under *Ingram*, the court reviews whether the decision to deny benefits is supported by substantial evidence in the record as a whole, including evidence submitted to the Appeals Council). Such evidence must be "new, material, and chronologically relevant" to the ALJ's decision. *Id.* at 1261.

Three years after Plaintiff's date of last insured (September 30, 2009), on September 20, 2012, Dr. Weiss opined that as of the date he first examined Plaintiff, on April 6, 2010, Plaintiff had "no significant changes in restrictions" from the PRE form that Dr. Weiss' office had completed on June 25, 2012. R. 335. Dr. Weiss signed the one-page form (prepared by Plaintiff's counsel) with the following statements:

In your medical opinion, what were your patient's restrictions as of:
(1) the date of your first neurologic examination, i.e. 4/6/10 and
(2) seven months prior to your first neurologic examination; i.e., 9/6/09.

-13-

R. 335.  He checked off the statement: "No significant changes in restrictions from the PRE form of 6/25/12."  R. 335.

Plaintiff argues that the Appeals Council should not have discounted Dr. Weiss' September 2012 letter stating that "as of the date he first examined" Plaintiff on April 6, 2010 claimant had "no significant changes in restrictions from the Physical Restriction Evaluation (PRE) form Dr. Weiss completed on June 25, 2012." R. 335.  Dr. Weiss further opined that Plaintiff's restrictions would be the same seven months *prior* to the first neurologic examination, *i.e.,* September 6, 2009. R. 335. Plaintiff argues that Dr. Weiss' retroactive opinion of Plaintiff's limitations contradicts the ALJ's conclusion that Plaintiff had no severe impairments. R. 24.

Plaintiff concedes that Dr. Weiss did not provide any narrative or cite to objective evidence on the September 2012 letter as the AC found, but argues that Dr. Weiss' letter refers to the Physical Restrictions Evaluation form that Dr. Weiss completed just three months earlier in June 2012, which did cite objective evidence and clinical findings to support the physical restrictions he gave the Plaintiff including an MRI of the lumbar spine which revealed a herniated nucleus pulposis at L5-S1 and lumbosacral spine tenderness during a neurological examination, lower extremity weakness, and increased pain with motion and with forward flexion.  R. 297.

Plaintiff argues that the Appeals Council erred by ignoring the objective evidence Dr. Weiss cited in support of his opinion.   Plaintiff contends that the Appeals Council did not have a basis to conclude that Dr. Weiss did not provide support for the restrictions he gave the Plaintiff.  Plaintiff argues that Dr. Weiss' September 2012 letter is new and non-cumulative, and the ALJ should have been given the opportunity to review it with the rest of the medical records.  In the Eleventh Circuit, Plaintiff contends, "a treating physician's opinion is still entitled to significant weight notwithstanding that he did not treat the claimant until after the relevant determination date." Doc. 19 at 10 (citing

*Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983)[3]; *Ward v. Astrue*, Case No. 3:00-cv-1137-J-HTS, 2008 WL 1994978, *8 (M.D. Fla. May 8, 2008) ("Evidence post-dating an individual's insured status may be relevant and properly considered if it bears 'upon the severity of the claimant's condition before the expiration of his or her insured status," and the "ALJ should consider evidence from a physician discussing the severity of an ongoing impairment or offering an opinion as to a claimant's condition prior to the date last insured.")).

Plaintiff argues that Dr. Weiss' opinion is entitled to controlling weight because he is Plaintiff's treating physician in the specialty of neurology and his opinion was based on a April 2010 lumbar MRI as well as numerous examination findings and is not controverted by any other medical testimony, except Dr. Wunsch's opinion, but it should be given less weight as the opinion of a non-examining reviewing physician.

The Commissioner argues that, even though it was Plaintiff's burden to prove he is disabled under the Act before the date of last insured, nearly all of the medical evidence Plaintiff provided is from well after his DIB insured status expired on September 30, 2009.   R. 222-335. The Commissioner argues that the Appeals Council properly found that Dr. Weiss' attempt to relate the restrictions back to September 2009, seven months before he began treating Plaintiff, did not render the ALJ's decision contrary to the weight of the record. R. 2, 335, citing *Ingram*, 496 F.3d at 1261. As the Commissioner points out, in the June PRE, Dr. Weiss expressly identified the applicable time period for such findings as June 8, 2012, to September 13, 2012, and not dating back to 2008 to September 2009. R. 297.

Here, the Appeals Council properly discounted Dr. Weiss' opinion that Plaintiff's limitations related back to September 2009 because the opinion was not supported by the medical records.  As

---

[3] *Boyd* was superseded by statute on other grounds having to do with the subjectivity of the pain standard, as explained in *Elam v. Railroad Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).

the Appeals Council recognized (R. 2) Dr. Weiss' treatment notes from Plaintiff's first treatment in April 2010 were largely normal.  Moreover, the only other medical evidence in the record from before April 2010 was from Dr. Gonzalez who treated Plaintiff only for diabetes management, and noted the physical exam (aside from Plaintiff's eye issue) was "unremarkable and non-contributory" on March 2008.  R. 219-20, 236.

## IV.   CONCLUSION

For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence.  Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on February 9, 2014.

_David A. Baker_

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record